# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| CHRISTOPHER JOSEPH, individually and on behalf of a class of similarly situated Montanans,<br><br>        Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA N.A. successor by merger to BAC HOME LOANS SERVICING, L.P. f/k/a COUNTRYWIDE HOME LOANS SERVICING; and RECONTRUST COMPANY, N.A.<br><br>        Defendants. | CV-11-129-BLG-RFC-CSO<br><br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

## I.    INTRODUCTION

Plaintiff Christopher Joseph ("Joseph") initiated this putative

class action in state court on October 3, 2011, claiming that Defendants

Bank of America, N.A., ReconTrust Company, N.A.,[1] and Bank of America Corporation failed to follow Montana's foreclosure laws in effecting a non-judicial foreclosure of his home. *Cmplt. (Court Doc. 1-2)*. Defendants removed the case, invoking this Court's diversity jurisdiction under the Class Action Fairness Act of 2005. *Notice of Removal (Court Doc. 1) at ¶ 9* (citing 28 U.S.C. §§ 1332 and 1453).

Joseph claims, *inter alia*, that Defendants violated Montana law by foreclosing on his home in their own names when they did not possess a beneficial interest in the property. *Court Doc. 1-2 at ¶¶ 8-13*. He further claims that Defendants: (1) "routinely claim[ ] to possess ownership rights in Montana properties when, in truth and fact, [they] possess[ ] no more than servicing rights[,]" *id. at ¶ 20*; and (2) "created or used documents essential to a valid trustee's sale that were improperly executed, notarized or sworn to[,]" *id. at ¶¶ 15-16, 21*.

On March 12, 2012, the parties jointly moved to dismiss Bank of America Corporation without prejudice. *Court Doc. 23*. Judge Cebull granted that motion. *Court Doc. 28*.

---

[1] Joseph sometimes refers to "ReconTrust" as "Recontrust." Where he has done so, the Court has inserted "ReconTrust."

Now pending is a motion to dismiss Counts I, II, and III of
Joseph's Complaint against Bank of America, N.A., and ReconTrust
Company, N.A. (collectively "Defendants"). *Court Doc. 7.* On March 13,
2012, the Court held a hearing on the motion to dismiss. The Court also
permitted the parties to file supplemental briefs following the hearing.
See *Court Docs. 37 and 38.*[2] The pending motion is now ripe for
decision.

## II.    BACKGROUND

### A.    Underlying Facts

Unless otherwise indicated, the following background is taken
from Joseph's Complaint (*Court Doc. 1-2*) and documents referenced in
the Complaint. The Court may consider these documents without
converting the motion to dismiss to a motion for summary judgment.
See *Chambers v. Montana Contractors Ass'n Health Care Trust*, 797
F.Supp.2d 1050, 1053 (D. Mont. 2009) (a "court may consider evidence

---

[2]Joseph also filed a Notice of Supplemental Authority pursuant to Local Rule
7.4, which allows parties to file a notice if "pertinent and significant authority
comes to a party's notice after the briefs have been filed...." The Court finds
here that Joseph's Notice did not present citations to "authority," but rather
to: (1) a Ninth Circuit brief filed in an Oregon case, and (2) an Oregon
newspaper article. It is not obvious to this Court how this "authority" is
either "pertinent" or "significant."

on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

In October 2004, Joseph borrowed $39,600 from Countrywide Home Loans, Inc. ("Countrywide"). Joseph executed a 20-year promissory note to repay Countrywide. *Court Doc. 8-6.* He also executed a Deed of Trust, which was promptly recorded with the Big Horn County Clerk and Recorder.

The Deed of Trust names Joseph as borrower, Countrywide Home Loans, Inc. as lender, and the Mortgage Electronic Registration Systems, Inc. ("MERS") as a "beneficiary under this Security Instrument," and as holder of "legal title to the interests granted by Borrower in this Security Instrument...." *Deed of Trust, attached as Ex. 1 to Cmplt.* (*Court Doc. 1-2 at 16*, 18). The Deed of Trust also provides that the "beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." *Id. at 17.* It also provides that "if

necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise" interests granted by the Borrower in the Security Instrument. *Id. at 18.* The Deed of Trust names Charles Peterson as trustee, and "irrevocably grants and conveys to Trustee, in trust" the real property at issue. *Id.*

In 2009, Joseph defaulted in his payments under the loan. *Court Doc.1-2 at 29; Court Doc. 8-3 at 2.*

Several documents were executed on April 26, 2010. First, MERS "as Beneficiary" assigned "all beneficial interest" in the Deed of Trust, to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP ("BAC-HLS"). *Court Doc. 8-1.* This assignment also purports to assign to BAC-HLS the "note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust." *Id.* Second, BAC-HLS appointed ReconTrust as successor trustee under the Deed of Trust. *Court Doc. 8-2 at 2.* Third, ReconTrust, as successor trustee, gave a Notice that the property would be sold at a public auction at a Trustee's Sale to be held at the County Courthouse at 11:00

AM, on September 15, 2010. *Court Doc. 8-3 at 2-4.* This Notice stated

that the Deed of Trust secured "an obligation owed to [MERS], as

Beneficiary...." *Id.* The record reflects that these three documents were

promptly recorded in the Big Horn County Clerk and Recorder's office.[3]

It is unclear whether a public auction was held as noticed. Joseph

alleges that he was present at the time and place noticed, and that no

one else was present and no sale was conducted. *Court Doc. 1-2 at 5, ¶*

*14.* ReconTrust executed a Trustee's Deed to the Federal National

Mortgage Association ("FNMA"), reciting that the public auction was

held and the property sold to FNMA. *Court Doc. 8-4.* This Trustee's

Deed recites that it was made and executed on September 15, 2010 (the

same day as the purported sale), but the deed was notarized as being

executed on September 20, 2010. *Id.*

An assignment of the deed of trust and the promissory note from

BAC-HLS to FNMA reflects the same date discrepancies. It was dated

by the "Authorized Signer" on September 15, 2010, but it was notarized

as executed on September 20, 2010.

---

[3] Joseph has not argued that Defendants violated Montana's laws on recording transfers to successor trustees or beneficiaries. *See MCA § 71-1-313(1).*

Joseph claims that he was unaware of the post-sale filings. He retained counsel who sent correspondence to ReconTrust, MERS, FNMA, and Bank of America seeking answers. No one responded. *Court Doc. 1-2 at ¶ 17.* In April 2011, FNMA filed an unlawful detainer action against Joseph claiming that it had purchased his property at "the April 29, 2010 auction sale" but that Joseph was still on the premises. *Id. at ¶ 18.*

Joseph contends that Defendants created or used documents essential to a trustee's sale that were improperly executed, notarized, or sworn to. *Id. at ¶¶ 21-23.* The documents prepared by or filed on behalf of Defendants "were 'robo-signed' documents generated with no oversight, review or inquiry and/or not actually witnessed by the notary." *Id.* Joseph alleges:

> Upon information and belief, there was no proper assignment of title or interest in the deed of trust because the various Defendants misrepresented their ownership/possessory interest at each stage of the purported transfer. Likewise, ... since the various Defendants did not, in fact, have an ownership interest (but rather no more than a right to 'service' the loan), they lacked legal authority under Montana law to substitute the trustee, and any actions taken by ReconTrust as purported substitute trustee are of no legal effect.

*Id. at ¶ 23.*

## B.   Joseph's Claims

Joseph brings the first three counts in his Complaint on his own behalf and on behalf of a purported class.  He brings Count IV solely on his own behalf in the event the Court does not certify a class action.

Joseph captions Count I as "Declaratory and Injunctive Relief," but it seeks only declaratory relief.  *Court Doc. 1-2 at 8-9, ¶¶ 25-30.*  He seeks declarations that: (1)  "Defendants lacked the legal right to foreclose [his] property and that the trustee's sale was invalid[,]" *id. at ¶ 28*; and (2) "any trustee's sale in which BOA claimed to have the authority to nominate ReconTrust to conduct a trustee's sale within the applicable time period is null and void and of no legal effect[,]" *id. at 30.*  Joseph contends that MERS did not possess a beneficial interest in the property, thus rendering void and legally invalid both MERS's assignment to BAC-HLS, and BAC-HLS's appointment of ReconTrust as substitute trustee.

In Count II ("Negligence/Misrepresentation/Deceptive Statements in Connection with Mortgage"), Joseph alleges Defendants caused him

damages when they "breached their duties and/or made misrepresentations and/or deceptive statements by: (a) claiming ownership interest in the subject properties they did or sought to foreclose when, in fact, they possessed no more than servicing rights, (b) failing to follow the procedures for trustee sales, [and] (c) creating or using documents essential to a valid trustee's sale that were improperly executed, notarized or sworn to in an effort to conceal the fact that they lacked authority to institute a valid trustee's sale." *Id.* at ¶ 33.

In Count III ("Negligent/Intentional Misrepresentation"), Joseph alleges that Defendants "made representations as to a material fact, to wit, that they possessed an ownership interest in Plaintiff and the class's real property entitling them to institute a trustee's sale under Montana law. Defendants further created or used documents essential to a valid trustee's sale that were improperly executed, notarized or sworn to in an effort to provide documentary support for their representations." *Id.* at ¶ 37. Joseph alleges that: (1) the representations were untrue; (2) Defendants made them knowing they were untrue or without any reasonable grounds for believing them to be

true; (3) Defendants made them intending to induce Joseph and the class to rely on them; (4) Joseph and the class were unaware of their falsity and were justified in relying on them; and (5) Joseph and the class sustained damages because of Defendants' misrepresentations, including loss of their homes, loss of equity in their homes, damage to their credit, and other damages. *Id. at ¶¶ 38-42.*

In Count IV, Joseph, solely on his own behalf in the event the Court does not certify a class action, alleges Defendants violated Montana's Unfair Trade Practices and Consumer Protection Act. *Id. at ¶ 44.*

## C.   The MERS System

This case, like many others nationwide, involves the MERS system. In *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038-40 (9th Cir. 2011), the Ninth Circuit analyzed the MERS system and explained:

> MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the

10

loan.  For simplicity, we will refer to the owner of the beneficial interest as the "lender."  The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan. Many of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—are members of MERS and pay a fee to use the tracking system.  *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

                    *       *       *

The plaintiffs' lawsuit is [ ] premised on the fact that MERS does not have a financial interest in the loans, which, according to the plaintiffs, renders MERS's status as a beneficiary a sham.  MERS is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan.  MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS.  *See* Dordan, 12 Loy. J. Pub. Int. L. at 182; *Jackson*, 770 N.W.2d at 491.  As a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans.  *Id*.

Here, Defendants admit that MERS is a wholly-owned subsidiary of MERSCORP, Inc., which is a privately held stock-holder corporation, and that MERS is a national electronic registry system that tracks the changes in servicing rights and beneficial ownership interests in mortgage loans that are registered on the registry.  *Court Doc. 6 at 5-6, ¶ 8.*

11

## III.  PARTIES' ARGUMENTS

As noted, Defendants seek dismissal of Counts I, II, and III of Joseph's Complaint.  The Court describes the parties' arguments respecting each count *seriatim*.

### A.  Count I

#### 1.  Defendants' Arguments

Defendants summarize Joseph's claim as follows:

> [Joseph] argues that because MERS was not a proper beneficiary, it could not assign the Deed of Trust to BAC-HLS, and BAC-HLS, in turn, could not appoint ReconTrust as successor trustee (Compl. ¶¶ 9-11.)  Because [Joseph's] challenge to ReconTrust's authority is premised on the fallacy that MERS could not act as beneficiary under the Deed of Trust, [Joseph's] claim must be rejected.

*Defts' Mem. Supporting Mtn. to Dismiss (Court Doc. 8) at 6-7.*

Defendants argue that ReconTrust had authority to initiate foreclosure proceedings because:

(1) Joseph represented and acknowledged when he executed the Deed of Trust that MERS is the beneficiary of the security instrument, *id. at 7*;

(2) Montana state courts have rejected Joseph's argument and upheld MERS's role as nominee beneficiary based on the same disclosure language contained in Joseph's Deed of Trust, *id. at 7-8* (citing *Waide v. U.S. Bank Nat'l Assoc.*, DV-10-1763 (Montana's Thirteenth Judicial District Court, Judge Watters), slip op. at 10 *(Court Doc. 8-5 at 1-17)*); see also *Pilgeram v. Greenpoint Mortgage Funding, Inc.*, DV-09-948A (Montana's Eleventh Judicial District Court, Judge Lympus), slip op. at 7-9 (*Court Doc. 22-1 at 1-9*);

(3) the Ninth Circuit Court of Appeals has rejected the argument that MERS is a "sham beneficiary" relying on the acknowledgments in the Deed of Trust to conclude that "it does not appear that the plaintiffs were misinformed about MERS's role in their home loans[,]" *id. at 8* (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d at 1042);

(4) other district courts in the Ninth Circuit have recognized that MERS may be designated as a beneficiary on a Deed of Trust, *id.* (citing *Birkland v. Silver State Fin. Servs.*, 2010 WL 3419372, at *4 (D. Nev. Aug. 25, 2010), *Ciardi v. The Lending Co.*, 2010 WL 2079735, at *3 (D.

Ariz. May 24, 2010), and *Derakhshan v. MERS, Inc.*, 2009 LEXIS 63176, at *18 (C.D. Cal. June 29, 2009));

(5) although MERS may initiate foreclosure proceedings directly by appointing a successor trustee, it also may instead assign its interest to another entity, which then appoints the successor trustee, as the Deed of Trust expressly contemplates, *id. at 9*; and

(6) courts in the Ninth Circuit have repeatedly affirmed the validity of trust deed assignments by MERS and Joseph cannot now void this arrangement through an attack on MERS that courts have repeatedly rejected, *id.* (citing *Stewart v. MERS, Inc.*, 2010 LEXIS 26291, at *33 (D. Or. Feb. 9, 2010), *Baisa v. Indymac Fed. Bank*, 2009 WL 3756682, *3 (E.D. Cal. Nov. 6, 2009), and *Blau v. America's Servicing Co.*, 2009 WL 3174823, at *7-8 (D. Ariz. Sept. 29, 2009)).

Defendants also challenge Joseph's claim that documents were "improperly executed, notarized, or sworn to" to further call into question ReconTrust's authority to foreclose. *Id. at 10-12*. They argue that the only document to which Joseph refers in raising this claim is the assignment of the Deed of Trust from MERS to BAC-HLS. This

document, Defendants note, was signed on MERS's behalf by Regina Myles.  Defendants argue that Joseph "cannot invalidate a recorded transfer that he was not a party to simply through a conclusory statement that the document signor lacked authority to initiate the transfer, when neither party to the transfer has raised such an objection."  *Id. at 11* (citing cases).  They further argue that Joseph's "speculation" that Myles was not a MERS employee also is immaterial.  *Id. at 12.*

## 2.    **Joseph's Arguments**

Joseph counters that his Count I declaratory judgment claim is well-pled.  He argues that Defendants lacked the authority to maintain a non-judicial foreclosure sale under Montana's Small Tract Financing Act, MCA §§ 71-1-301, et seq. ("STFA").  *Joseph's Resp. Br. (Court Doc. 17) at 11.*  Joseph makes five arguments in opposition to Defendants' motion to dismiss Count I.

First, Joseph argues that MERS was not the "beneficiary" as contemplated in the STFA.  He cites authority from other jurisdictions for the proposition that MERS's role as a beneficiary may be at issue

where, as here, a plaintiff alleges violations of state recording and foreclosure statutes based on the "beneficiary" designation. *Id.* (citing *Cervantes*, 656 F.3d at 1044; *Mortgage Elec. Registration Sys. v. Saunders*, 2 A.3d 289, 294-97 (Me. 2010); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 167 (Kan. 2009); *Hooker v. Northwest Tr. Servs.*, 2011 WL 2119103, at *4 (D. Or. May 25, 2011); *Ralph v. Met Life Home Loans*, (Idaho Aug. 10, 2011) (attached to Joseph's Br. at Ex. 4)).

Joseph argues that MERS is identified inconsistently in the relevant documents. For example, Joseph argues, in the Deed of Trust and Notice of Sale, MERS is identified as the original beneficiary, "a beneficiary," or "the beneficiary ... (solely as nominee for Lender and Lender's successors and assigns) ...." *Id. at 12*. In another provision, Joseph argues, the Deed of Trust specifies that "MERS holds only legal title to the interests granted by Borrower." *Id.* Joseph argues that, "[i]n short, MERS does not serve in any position recognized by the STFA." *Id.* And, he argues, "[n]otwithstanding vague and inconsistent reference to MERS as 'a beneficiary' in the Deed of Trust, MERS is not the 'Beneficiary' as that term is defined in the STFA because MERS was

not the entity 'for whose benefit the Deed of Trust is given.' " *Id*. (citing MCA § 71-1-303(1). "MERS cannot be the 'Beneficiary' as defined in the STFA because MERS is specified to hold only 'legal title' and only as a nominee for the Lender." *Id. at 11-12.* Thus, Joseph argues, the Deed of Trust transfers no interest to MERS and MERS, therefore, had no "power of sale[,]" which rested solely with the Trustee, Charles J. Peterson. *Id. at 13* (citing *MERS v. SW Homes of Arkansas*, 301 S.W.3d 1, 4 (Ark. 2009) ("MERS is not the beneficiary, even though it is so designated in the deed of trust.")).

Joseph argues that courts in Oregon and Idaho also have concluded that an assignee of MERS had no authority to foreclose under state statutes defining "beneficiary" similarly to Montana's STFA. *Id. at 13-16* (citing *Hooker*, *supra* (applying Oregon law), and *Ralph*, *supra* (applying Idaho law)); see also *Bank of New York v. Silverberg*, 86 A.3d 274, 280 (N.Y. 2011); *U.S. Bank N.A. v. Bressler*, 2011 WL 6115849 (N.Y. Dec. 7, 2011).

In sum, Joseph argues that "whether and how the parties designated MERS in the Deed of Trust is immaterial" and also it "is

immaterial that [ ] Joseph signed the Deed of Trust bearing MERS['s] inconsistent designations because the parties could not contract away the meaning of 'Beneficiary' under the STFA." *Id. at 16*.

Second, Joseph argues that because MERS was not the beneficiary under the STFA, it lacked authority to appoint a successor trustee. Thus, Joseph argues, BAC-HLS lacked authority to appoint ReconTrust as a substitute trustee. *Id. at 18*.

Third, Joseph argues that Defendants violated the STFA by failing to record proper assignments of the Deed of Trust by the trustee or beneficiary before conducting a trustee's sale. *Id. at 19* (citing MCA § 71-1-313(1)).

Fourth, Joseph argues that Defendants violated the STFA by failing to designate a trustee separate from the beneficiary. *Id*. Specifically, he argues that Bank of America was the purported beneficiary and its wholly-owned subsidiary, ReconTrust, was the purported substitute trustee. Because they "are one and the same for purposes of the STFA[,]" Joseph argues, Defendants violated the STFA's

provision that prohibits the beneficiary from also being the trustee when ReconTrust was appointed successor trustee. *Id. at 19-20.*

Fifth, Joseph argues that Defendants violated the STFA by failing to "cry the sale."  He argues that he was present at the place of the sale on the date and at the time it was to take place, and no one else was present nor did anyone cry the sale, thus violating the STFA. *Id. at 20-21.*

## B.    Count II

### 1.    Defendants' Arguments

Defendants seek dismissal of Joseph's negligence claim in Count II by arguing that lenders do not owe borrowers a fiduciary duty that would give rise to an action in tort. *Court Doc. 8 at 12-14.*  Because Joseph has not alleged facts showing that Defendants owe him a fiduciary duty, Defendants argue, their relationship is governed by the terms of the loan documents. *Id. at 13-14.*  Also, Defendants argue that, to the extent Joseph attempts to bring this claim under the Montana Mortgage Act (MCA §§ 32-9-101 through 170 (the "Act")), he is

precluded from doing so because the Act does not provide for a private right of action by consumers.  *Id. at 14-15*.

## 2.  Joseph's Arguments

Joseph agrees with Defendants that, under Montana law, "a bank does not owe a fiduciary responsibility to its borrower" and that MCA "§ 32-9-124 does not create a private right of action against Defendants here." *Court Doc. 17 at 21*.  But Joseph argues that "Defendants' conduct in this case went beyond merely 'lending money' and implicated statutory duties set forth under the STFA." *Id*.  He argues that Defendants breached several duties by virtue of statutory requirements the STFA places upon Defendants.  Thus, Joseph argues, "[u]nder the unique circumstances of this case, and in view of the clearly defined duties under the STFA, [Joseph's] negligence claim is well-pled and not subject to dismissal." *Id. at 22*.

## C.  Count III

## 1.  Defendants' Arguments

Defendants seek dismissal of Joseph's negligent or intentional misrepresentation claim in Count III arguing that it rests on the same

faulty theory as his claim for declaratory relief – that Defendants lacked the authority to conduct the trustee's sale. Also, Defendants argue, even if Joseph could show that Defendants misrepresented their interest in the property, he has failed to allege any type of reliance, which is a necessary element of both types of misrepresentation claims. *Court Doc. 8 at 15-19.*

### 2. Joseph's Arguments

Joseph argues that he has adequately pled a misrepresentation claim under Montana law and that "Defendants' attempt to build an additional pleading requirement for a fraud claim which [Joseph] has not pled should be rejected as a red-herring." *Court Doc. 17 at 23-24.*

## IV. LEGAL STANDARD

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___ U.S. ___, *129 S. Ct. 1937, 1949 (2009)* (internal quotation

marks and citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." *Bell Atlantic Corp. v. Twombly*, *550 U.S. 544, 555 (2007)* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, *129 S.Ct. at 1949* (citing *Twombly*, *550 U.S. at 557*).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, *129 S.Ct. at 1949* (citing *Twombly*, *550 U.S. at 570*). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, *550 U.S. at 556*). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. Furthermore, the Court is not obligated to accept as true

"legal conclusions" contained in the complaint. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id. at 1950*.

## V. DISCUSSION

### A. Count I

Defendants' motion to dismiss Count I raises the threshold issue whether Montana's Small Tract Financing Act permits MERS to be the beneficiary in a trust indenture as the lender's nominee.

The Montana Supreme Court has not yet addressed this question. In the absence of such a decision, a federal court "must predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996) (*citing Arizona Elec. Power Coop., Inc. v. Berkeley,*, 59 F.3d 988, 991 (9th Cir. 1995)). The Ninth Circuit holds that intermediate appellate court decisions must be followed unless there is "'convincing evidence' that the [state's highest

court] would hold otherwise." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 -933 n. 7 (9th Cir. 2011) (*citing Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010)). Montana has no intermediate appellate courts, but state trial courts have considered these issues.

The Ninth Circuit has not recently had occasion to address the deference that federal courts must give to the decisions of state trial courts. In 1950, however, the Ninth Circuit held that federal courts are bound when "a goodly number of the trial courts of the state generally and for a considerable period of time have adhered to a common interpretation...." *State of California v. Fred S. Renauld & Co.,* 179 F.2d 605, 609 (9th Cir. 1950). Such is not the case here. Even when not bound, however, a federal court must give proper respect and consideration to relevant rulings of the state courts.

The Court is mindful that state and federal courts around the country are struggling with the issues raised by the role given to MERS in the Deed-of-Trust forms used in many states. Ultimately, each state must address the parties' issues pursuant to state law. Absent direction from the Montana Supreme Court, this Court's duty, as noted

above, is to predict how that court would decide the issues.[4] With these rules in mind, the Court turns to the issues presented by Defendants' motion to dismiss.

The Court's analysis necessarily begins with the STFA's definition of "beneficiary":

> "Beneficiary" means the person named or otherwise designated in a trust indenture as the person for whose benefit a trust indenture is given or the person's successor in interest, who may not be the trustee.

MCA § 71-1-303(1).

When Montana courts interpret a statute, they generally "seek to implement the intention of the Legislature." *Williamson v. Montana Public Service Comm'n*, ___ P.3d ___, 2012 WL 458792, at *11 (Mont. Feb. 14, 2012) (citing MCA § 1-2-102). A court's interpretation of a statute must be reasonable. MCA § 1-3-233; *Grossman v. State, Dept. of Natural Resources*, 682 P.2d 1319, 1332 (Mont. 1984). Courts follow two steps in attempting to determine legislative intent.

---

[4]The Court attempted to obtain the parties' agreement to certify the issues to the Montana Supreme Court, but was unable to do so.

First, courts look at the plain meaning of the statute's words. *Williamson*, at * 11 (citing *In re K.M.G.*, 229 P.3d 1227, ¶ 26 (Mont. 2010)). "Where the language is clear and unambiguous, the statute speaks for itself and [courts] will not resort to other means of interpretation." *Id.* (citing *Rocky Mountain Bank v. Stuart*, 928 P.2d 243, 246 (Mont. 1996)). Courts must give the legislature's words their usual and ordinary meaning. *Rocky Mountain Bank*, 928 P.2d at 246-47 (citing *Werre v. David*, 913 P.2d 625, 631 (Mont. 1996)). Second, if a statute's language is unclear or ambiguous, Montana courts must resort to statutory construction rules to discern and give effect to legislative intent.

Applying these statutory construction rules here, the first inquiry is whether the STFA's language is clear and unambiguous in defining "beneficiary." This Court finds that it is. As noted above, the definition provides that "[b]eneficiary means the person named ... in a trust indenture as the person for whose benefit a trust indenture is given or the person's successor in interest...." *MCA § 71-1-303(1)*. The STFA

likens the role of the beneficiary to that of a mortgagee under the law relating to mortgages on real property.  *See MCA 71-1-305.*

At the hearing on Defendants' motion, Defendants' counsel acknowledged that "the entity that loaned the money is the ultimate entity that benefits from the stream of loan payments[.]" *Court Doc. 31, p. 13, ll. 6-7.*  It is undisputed that Countrywide is the entity that loaned Joseph money.  MERS did not loan Joseph money.  *Cmplt. (Court Doc. 1-2) at ¶ 8; Answer (Court Doc. 6) at ¶ 8.*  Defendants have neither alleged nor shown that MERS is the entity designated to benefit from the stream of loan payments Joseph made or was to make on the loan with Countrywide.  There is no contention that the note was assigned to MERS.

Throughout the STFA, references to "beneficiary" make clear that the beneficiary is the entity to whom the secured obligation flows.  *See, e.g., MCA § 71-1-304* (referring to the trust as securing "the performance of an obligation ... to a beneficiary")*; MCA § 71-1-305* (stating that "[f]or the purpose of applying the mortgage laws, the grantor in a trust indenture is deemed the mortgagor and the

beneficiary is deemed the mortgagee"); *MCA § 71-1-310* (providing that a title insurer is liable to the beneficiary as stated); *MCA § 71-1-312(1), (3)* (referencing payments made to the beneficiary).

Furthermore, the STFA's definition of "beneficiary" states that the beneficiary "may not be the trustee." *MCA § 71-1-303(1)*. "Trustee" is defined as "a person to whom the legal title to real property is conveyed by a trust indenture...." *MCA § 71-1-303(7)*. Although the Deed of Trust conveys legal title in the property to Charles Peterson as Trustee, it also, and perhaps inconsistently, identifies MERS as an entity that holds legal title to the real property. The trust indenture states that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument ...." *Court Doc. 1-2 at 18.* Because the beneficiary cannot also be the "trustee" – defined in the STFA as "a person who holds legal title" –  it unambiguously follows that MERS may not be the beneficiary.

Accordingly, under the STFA's statutory structure, the Court concludes that MERS clearly does not meet the STFA's definition of "beneficiary."

Counsel agreed at the oral argument that the parties may not "contract around" the STFA. In other words, the fact that the Deed of Trust purports to name MERS as a beneficiary cannot override the fact that MERS does not qualify as a beneficiary under Montana law.

Defendants' secondary argument is that, even if MERS is not a beneficiary, it may nonetheless properly execute the documents in question because it was in effect the agent of the lender, who was the proper beneficiary. Defendants' counsel argued at the hearing that:

> ... there's never been understood to be any obstacle and there's not any obstacle or restriction or limitation called into the statute that limits that lender from appointing an agent to act as beneficiary, which is what has traditionally been understood [that] the statute ... permit[s].
>
> \*      \*      \*
>
> I would say that MERS is the agent of the entity for whose benefit [the trust indenture is given], ... agents are frequently appointed to perform tasks by other entities for various business reasons, and ... there's no restriction in the statute that prevents the ultimate economic beneficiary of the transaction the party entitled to the stream of payment, to appoint an agent for certain purposes[.]

*Hrg. Transcript (Court Doc. 31) at 13, 15-16.*

Although no Montana Supreme Court case has addressed whether MERS, as the lender's nominee, held the status of the lender's agent vested with authority to act under the STFA, Defendants' position here that MERS acted as the beneficiary's agent is not novel. Other courts have examined the relationship between MERS and lenders in similar financial instruments and concluded that MERS acted as an agent on behalf of the lender. *Blau v. America's Servicing Co.*, 2009 WL 3174823, at \*6-8 (D. Ariz. Sept. 29, 2009) (citing *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166 (Kan. 2009)); *In re Sheridan*, 2009 WL 631355, at\*4 (Bankr. D. Idaho Mar. 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registration System, Inc. v. Southwest*, 301 S.W.3d 1, 4 (Ark. 2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); [but see] *LaSalle Bank Nat. Ass'n v. Lamy*, 824 N.Y.S.2d 769, \*2 (unpublished slip op.) (N.Y. Sup. 2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.")).

In *James v. ReconTrust Co.,* 2012 WL 653871 (D. Or. 2012), the Oregon federal court found that MERS did not qualify as a beneficiary under the Oregon Trust Deed Act, legislation similar to Montana's STFA. That court also found, however, that Oregon's act "does not forbid an agent, when acting with authority and on behalf of its principal, the beneficiary, from making assignments." *Id. at * 18, n.20.* That court concluded that "MERS, when authorized by its principal (or principals) to do so, may act as a 'nominee,' or agent, for the lender and the lender's successors and may make assignments of the trust deed both on the lender's behalf and on behalf of the lender's successors." *Id. at * 3.*

Also, although not binding on this Court, two recent Montana state district court cases have considered trust indenture language substantially similar to the language in the Deed of Trust here and concluded, contrary to this Court's conclusion, that MERS could qualify as a beneficiary under the STFA. See *Waide v. U.S. Bank Nat'l Ass'n*, DV-10-1763, slip op. at 10 (Watters, J., Yellowstone County Dist. Ct., June 28, 2011) (*Court Doc. 8-5 at 1-17*); *Pilgeram v. Greenpoint*

*Mortgage Funding, Inc.*, DV-09-948A, slip op. at 7-9 (Lympus, J., Flathead County Dist. Ct., Dec. 13, 2011) (Court Doc. 22-1 at 1-9). Although not expressly reaching this issue, those courts also appear to have relied on MERS's status as a "nominee" of the beneficiary under the trust indentures in concluding that MERS had the ability to act with the beneficiary's authority under the STFA.

Under Montana law,

> An agent is one who represents another, § 28–10–101, MCA, and agency is either actual or ostensible, § 28–10–103(1), MCA. An actual agency occurs when the agent is "really employed" by the principal, and is ostensible when the principal "intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." Section 28–10–103(1), MCA. Agency may be created and authority to act conferred by prior authorization or subsequent ratification, and consideration is not required to create an agent's authority. Sections 28–10–201 and –202, MCA. An agent represents the principal and the rights and liabilities that accrue from the agent's acts accrue to the principal. Section 28–10–601, MCA.
>
> A court may review the record to determine whether there is sufficient evidence of agency, *Butler Mfg. Co. v. J & L Implement Co.*, 167 Mont. 519, 523, 540 P.2d 962, 965 (1975), and the existence of agency may be implied from conduct and from all the facts and circumstances of the case. *Butler Mfg.*, 167 Mont. at 524, 540 P.2d at 965.

*Dick Anderson Const., Inc. v. Monroe Property Co., LLC*, 255 P.3d 1257, 1261-62 (Mont. 2011).

The four corners of the Deed of Trust in the case at hand make clear that Countrywide, as lender and beneficiary, gave MERS full authority to act as its nominee or agent. The language of the Deed of Trust compels the Court to conclude that MERS may act as the agent of the lender and the lender's successors and assigns. The Deed of Trust provides that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." *Court Doc. 1-2 at 16*. The Deed of Trust describes the nominee's authority:

> *[I]f necessary to comply with law or custom*, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests [granted by borrower in the Deed of Trust], including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument.

*Id. at 18* (emphasis added).

Reading the foregoing language in the context of Montana agency law compels the Court to conclude that MERS was Countrywide's agent, cloaked with authority to act on the lender's behalf under the Deed of

Trust.  See *Blau*, 2009 WL 3174823, at *8 (applying Arizona law).  This conclusion also is consistent with decisions of this Court, the Montana Supreme Court, and a Montana state court on the general issue of whether an agent can perform acts for which another party is responsible under the STFA.

In *Diehl v. ReconTrust Company, N.A.*, U.S. Magistrate Judge Lynch concluded that "Montana law under the Small Tract Financing Act does not prohibit a qualified trustee from delegating the task of crying a foreclosure sale to an agent."  2010 WL 2175894, at *3 (Findings and Recommendation) (D. Mont., Apr. 22, 2010).  Judge Lynch relied on the Montana Supreme Court's decision in *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116 (Mont. 2007), for the proposition that "an indenture trustee, performing duties under the [STFA], may delegate those duties to another party."  *Id*.  Judge Lynch also relied on the state district court decision in *Dolan v. Union Planters Bank*,  DV-99-87785, slip op. at 5, 10 (Missoula County Dist. Ct., Sept. 29, 2000).  In discussing the state court's decision, Judge Lynch noted:

> The district court noted that under Montana law a principal
> can authorize an agent to act on behalf of the principal, and

the agent, in turn, can perform any act that the principal could perform. [*Dolan*] at 5 of 19, and 10 of 19 (citing Mont. Code Ann. § 28-10-105(2)).  Section 28-10-105(2) provides that "[e]very act that, according to this code, may be done by or to any person may be done by or to the agent of the person for that purpose unless a contrary intention clearly appears." As required by § 28-10-105(2) the court concluded that the Small Tract Financing Act at § 71-1-315(3) did not limit the parties or entities who are permitted to conduct the sale, and the statute did not prohibit [the trustee] from appointing an agent [ ] to conduct the sale. [*Dolan*] at 10 of 19.

*Diehl*, at *4.

Judge Molloy subsequently adopted Judge Lynch's findings and recommendation in full.  *Diehl v. ReconTrust Company, N.A.*, 2010 WL 2178513, at *2 (D. Mont., May 27, 2010).  He, too, relied on *Knucklehead* and *Dolan* in adopting Judge's Lynch's determination. Judge Molloy ultimately concluded that the STFA does not "prohibit a trustee from designating an agent to conduct the foreclosure sale[ ]" because "Montana law permits a party to designate an agent to do most acts for which the party is responsible, 'unless a contrary intention clearly appears.' "  *Id.* (citing MCA § 28-10-105(2)).

No "contrary intention clearly appears" in the STFA that would preclude the lender from designating an agent to act on the lender's

behalf to exercise all pertinent authority of a beneficiary under the trust indenture.[5]  *See also Scott D. Erler, D.D.S. Profit Sharing Plan v. Creative Finance & Investments, L.L.C.,* 203 P.3d 744, 755-56 (Mont. 2009) (quiet title action upholding vendor's ratification of agent's forged conveyance of property).  Because resolution of this issue rests on construction of Montana law, the authority Joseph has cited for his position on this issue is inapplicable.

The Court thus concludes that MERS could and did, as Countrywide's nominee/agent, assign the beneficial interest in the deed of trust to BOA-HLS.  BOA-HLS properly appointed ReconTrust as a successor trustee.[6]  Accordingly, Joseph's contention that Defendants lacked the authority to maintain a non-judicial foreclosure fails.

---

[5]The Montana Supreme Court has not had occasion to define the term "nominee" in this context.  That Court has considered a real property dispute in which the terms "nominee" and "agent" were intended by a party to be "essentially one and the same."  *See LeFeber v. Johnson*, 209 P.3d 254, 258, 260 (2009) (holding that district court correctly applied equitable principles to a property dispute between a "cohabiting" couple).

[6]Joseph's argument that BOA-HLS could not act as a successor trustee because it was a subsidiary of the assignee beneficiary was not presented in his Complaint.  Defendants represent that Bank of America, N.A. and ReconTrust, N.A. are separately chartered federal banks.  *Court Doc. 20 at 11.*  Joseph makes no allegation or argument that the corporate identities of these entities must be disregarded.  Accordingly, this argument is rejected.

**B.**   <u>Count II</u>

Respecting Joseph's negligence claim in Count II, the Court concludes that it should be dismissed. Under Montana law, a negligence claim requires proof of: (1) the existence of a duty; (2) breach of the duty; (3) causation; and (4) damages. *Abraham v. Nelson*, 46 P.3d 628, 631 (Mont. 2002) (citation omitted). In the case at hand, as noted in the documents described above, Joseph sought and obtained a loan. The terms of the loan are reflected in the documents discussed. Under Montana law, a breach of any obligation arising from the loan documents may give rise to a breach of contract claim. But it does not give rise to a claim sounding in tort unless under the parties had a relationship creating a fiduciary duty in the lender owed to the borrower. "It is well settled in Montana that '[t]he relationship between a bank and its customer is generally described as that of debtor and creditor ... and as such does not give rise to fiduciary responsibilities.' " *Richland Nat'l Bank & Trust v. Swenson*, 816 P.2d 1045, 1050 (Mont. 1991) (citations omitted). An exception to this general rule exists, however, which the Montana Supreme Court described as follows:

> A fiduciary relationship exists between a bank and its debtor
> only if special circumstances indicate exclusive and repeated
> dealings with the Bank. *Pulse v. North American Land Title
> Co. of Montana*, 707 P.2d 1105 (Mont. 1985). This Court has
> recently interpreted the *Pulse* case as requiring a bank to act
> as a financial advisor in some capacity, other than that
> common in the usual arms-length debtor/creditor
> relationship, in addition to requiring a long history of
> dealings with the bank, to establish a fiduciary relationship.
> *Simmons v. Jenkins*, 750 P.2d 1067, 1070 (Mont.1988).

*Coles Dept. Store v. First Bank (N.A.) Billings*, 783 P.2d 932, 934 (Mont.

1989) (quoting *First Bank (N.A.) Billings v. Clark*, 771 P.2d 84, 92

(Mont. 1989)).

Here, Joseph has not alleged exclusive and repeated or any long

history of dealings with a bank or any of the Defendants, nor has he

alleged that a bank or any Defendant acted as a financial advisor to

him. Also, he has not alleged that his relationship with any Defendant

involved anything more than an arms-length loan and mortgage-type

transaction. Such transactions do not give rise to a fiduciary duty

under Montana law. *See, e.g., First Security Bank v. Abel*, 184 P.3d 318,

324 (Mont. 2008) (rejecting claim that loan transaction based on

promissory note and security agreement "placed Bank in the role of [an]

advisor" to create a fiduciary duty). Also, Joseph concedes in his

38

response brief both that, absent special circumstances, banks do not owe a fiduciary duty to borrowers and that MCA § 32-9-124 does not create a private right of action against Defendants. *Court Doc. 17 at 21.* For these reasons, Defendants' motion should be granted to the extent it relates to Count II (negligence) of Joseph's Complaint.

In reaching this conclusion, the Court was unpersuaded by Joseph's argument that Montana's STFA imposed statutory duties on Defendants the breach of which gives rise to a negligence claim. Joseph cited no authority for this position, and the Court is unaware of any. It would be inappropriate for the Court to create a cause of action by inferring duties from STFA language that Montana's courts have not recognized.

## C.   Count III

Respecting Joseph's claim in Count III for negligent or intentional misrepresentation, the Court concludes that it should be dismissed. Under Montana law, a negligent misrepresentation claim has the following elements: "a) the defendant made a representation as to a past or existing material fact; b) the representation must have been

39

untrue; c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; d) the representation must have been made with the intent to induce the plaintiff to rely on it; e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying on the representation; f) the plaintiff, as a result [o]f his or her reliance, sustained damage." *Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009).

Here, Joseph has not alleged that he acted in reliance upon the truth of any alleged misrepresentation by Defendants. This flaw is fatal to his claim of negligent or intentional misrepresentation. For this reason alone, Defendants' motion should be granted to the extent it relates to Count III of Joseph's Complaint.

## VI. JURISDICTION OVER REMAINING COUNT

The recommendations discussed above raise the issue whether the Court may retain subject matter jurisdiction. As noted above, Defendants removed this action on November 28, 2011, invoking this

Court's diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *Notice of Removal (Court Doc. 1) at ¶ 9* (citing 28 U.S.C. §§ 1332 and 1453).

At the hearing on Defendants' motion to dismiss, Joseph's counsel and counsel for Defendants agreed that the case would not be suitable as a class action if the Court were to conclude, as it has here, that MERS had authority to act on the lender's behalf. If the matter is no longer a class action, counsel agreed that the Court would no longer have subject matter jurisdiction under CAFA and the matter should be remanded to state court. *Court Doc. 31 at p. 31, ll. 10-23; p. 32, ll. 10-25; p. 33, ll. 1-2 and 22-25; p. 34, ll. 1-2.* Under this circumstance – that is, in the absence of subject matter jurisdiction, it would be inappropriate to retain jurisdiction over Count IV.

## VII. <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that:

(1) Defendant's motion to dismiss Counts I, II, and III be GRANTED for the reasons set forth above, and

(2) This matter should be REMANDED to state court.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 23th day of April, 2012.


/s/ Carolyn S. Ostby
United States Magistrate Judge